AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of West Virginia



In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 2:19-mj-00095
2607 6th Avenue, Charleston, Kanawha County, West Virginia )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Southern_____ District of _____West Virginia_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Section 841(a) | Distribution of a controlled substance |
| 21 U.S.C. Section 846 | Conspiracy to distribute a controlled substance |

The application is based on these facts:

See attached affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Joshua D. Mehall, United States Postal Inspector
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Sept. 5, 2019

_____
*Judge's signature*

City and state: Charleston, West Virginia          Dwane L. Tinsley, United States Magistrate Judge
*Printed name and title*

**A F F I D A V I T**

STATE OF WEST VIRGINIA

COUNTY OF KANAWHA, to-wit:

I, Joshua D. Mehall, being duly sworn, hereby depose and state as follows:

    1. I am a United States Postal Inspector employed with the United States Postal Inspection Service since February 2007. My responsibilities include the investigation of crimes involving the United States Postal Service and crimes furthered through the use of the United States Mail. This includes the investigation of controlled substances sent through the United States Mail. I have extensive experience with narcotics investigations and in the interdiction of illegal drugs shipped via the United States Mail, and have received training relative to criminal investigations and narcotics trafficking from the United States Postal Inspection Service. I have further been trained to locate, identify, and disrupt drug trafficking organizations engaged in ongoing and repeated transmission of illegal controlled substances and the proceeds from the sale and distribution of controlled substances via the United States Mail. I have personally identified and disrupted numerous such organizations in the past and employ substantive investigative techniques to identify and stop subjects who have used and by apparent indications intend to continue to use the United States Mail as a means of engaging in such illicit

activity. In this capacity, I have been the affiant on numerous federal search and seizure warrants.

2. In a substantial number of residential searches executed in connection with the drug investigations in which my office and I have been involved, the following kinds of drug-related evidence have typically been recovered: (1) controlled substances; (2) paraphernalia for using, packaging, processing, weighing, and distributing controlled substances, for example: scales, precursors, cutting agents, funnels, sifters, grinders, glass panes and mirrors, razor blades, plastic bags, and heat-sealing devices; (3) books, records, receipts, notes, ledgers and other papers relating to the distribution of controlled substances; (4) personal books and papers reflecting names, addresses, telephone numbers, and other contact/identification data relating to the distribution of controlled substances; (5) cash, currency, and records relating to income and expenditures of money and wealth relating to controlled substances, for example, money order, wire transfer and cashier's check receipts, bank statements, passbooks, checkbooks, and check registers. In addition, during the course of said residential searches, the agents have also found items of personal property which tend to identify the person(s) in residence, occupancy, control or ownership of the subject premises. Such identification evidence is typical of the articles people commonly maintain in their residences, such as cancelled


mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, and keys.

3. Based upon my experience and training, as well as the corporate knowledge and experience of other agents and law enforcement, I am aware that it is generally a common practice for drug traffickers to store their drug inventory and drug-related paraphernalia (as described above) in their residences. Furthermore, it is generally a common practice for drug traffickers to maintain in their residences records relating to their drug trafficking activities. Because drug traffickers in many instances will "front" (i.e., sell on consignment) controlled substances to their clients, or alternatively, will be "fronted" controlled substances from their suppliers, such record-keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances. Additionally, telephone/address listings of clients and suppliers necessarily must be maintained and immediately available in order to efficiently conduct their drug trafficking business. Moreover, it is also a generally common practice for traffickers to conceal at their residences large sums of money, either the proceeds from drug sales or to be utilized to purchase controlled substances. In this connection, drug traffickers typically make use of wire transfers, cashier's

checks, and money orders to pay for controlled substances. Evidence of such financial transactions and records relating to income and expenditures of money and wealth in connection with drug trafficking would also typically be maintained in residences.

4. I am also aware from my own experience and training that it is a very common practice for drug traffickers to maintain firearms and ammunition in their residences for the purpose of protecting their drug inventory and drug proceeds stored there, not only from law enforcement personnel but also other drug traffickers who may attempt to steal drugs or money. Firearms and ammunition have been recovered in a large majority of residence searches in the drug investigations in which I have been involved.

5. It is also a common practice for drug traffickers to maintain mobile or portable cellular telephones close at hand in order to facilitate their drug trafficking business. Such equipment permits traffickers to remain in close and nearly instantaneous communication with their customers and suppliers. Cellular telephones also typically have electronic memory capability within which frequently-called telephone numbers can be stored and "speed-dialed". Moreover, in a number of other drug trafficking investigations, the electronic memories of such cellular telephones have been found to contain the contact telephone numbers of other persons identifiable as being involved in the drug trafficking activity under investigation.

## BACKGROUND OF INVESTIGATION

6. Since January 2018, your affiant has been working an investigation, with other agencies, involving the distribution of large quantities of methamphetamine coming from Los Angeles, California to multiple addresses in and around the greater Charleston, West Virginia area. Your affiant has seized US Mail packages containing large amounts of methamphetamine as part of this investigation. As part of the investigation, law enforcement has an ongoing Mail Watch seeking large parcels originating from Los Angeles, California and surrounding areas destined to addresses in the greater Charleston, West Virginia area.

7. On September 4, 2019, your affiant was notified that there was a suspicious package: a U.S. Postal Service Priority Mail Package bearing tracking number "9505513908479246248353" with a return address of "Tony Alston, 4426 11th Ave, Los Angeles, CA 90008" and a delivery address of "Mark Alston, 174 Wertz Ave, Charleston WV, 25311" (hereinafter referred to as the "SUBJECT PARCEL"). The SUBJECT PARCEL is a larger brown box with a handwritten Priority Mail Label. SUBJECT PARCEL was mailed on September 3, 2019 from Los Angeles, California with $74.35 postage affixed. The SUBJECT PARCEL is presently located at 2607 6th Avenue, Charleston, West Virginia 25387. The SUBJECT PARCEL matched the characteristics of the Mail Watch inbound from Los Angeles,

5

California to "174 Wertz Ave, Charleston, WV 25311". Your affiant and other law enforcement proceeded to the Charleston Mail Processing and Distribution Center (P&DC), and identified and reviewed the SUBJECT PARCEL, and found, among other characteristics, the SUBJECT PARCEL bore a handwritten label, was excessively taped, and was being sent from California, a known source state for illegal drugs coming into the Southern District of West Virginia.

8. On September 5, 2019, Deputy Keadle, Kanawha County Sherriff's Office (KCSO), provided her trained narcotic detection dog, "Paco". Paco has experience with narcotics investigations including drug parcels and was last certified in April 2019. The SUBJECT PARCEL was placed in a line-up with four (4) additional boxes of various shapes and sizes. Paco conducted an exterior examination of all the parcels. Dep. Keadle informed me that Paco positively alerted on the SUBJECT PARCEL indicating the presence of the odor of a controlled substance.

9. On September 5, 2019, PI Mehall applied for and received a federal search warrant for the SUBJECT PARCEL. Upon executing the warrant, law enforcement seized 18 ziploc bags, which were secreted inside a plastic container inside the SUBJECT PARCEL. The 18 bags contained a white crystal substance with a total weight of 18lbs, 4 oz. The crystal substance field tested positive for methamphetamine.

10. PI Mehall removed approximately 11.2 grams of the crystal substance as a representative sample to be placed back in the original packaging for an attempted controlled delivery. The remainder of the crystal substance was entered into evidence. The representative sample was placed back in the original packaging, along with three reams of paper and additional inside packaging in order to approximate the weight of the original SUBJECT PARCEL.

11. On September 5, 2019, the SUBJECT PARCEL was delivered to 174 Wertz Ave, Charleston, WV 25311. The SUBJECT PARCEL was left on the porch of the residence, and was watched by law enforcement. A few minutes after the SUBJECT PARCEL was left on the porch, law enforcement informed PI Mehall that a black male, later identified as JOHN HARVEY BUSH, JR. (BUSH), had arrived in a silver Chrysler Aspen with a West Virginia license plate number 45D359 (SUBJECT VEHICLE). The license plate for SUBJECT VEHICLE was later confirmed to belong to a J.H. Bush. BUSH exited SUBJECT VEHICLE, picked up SUBJECT PARCEL, and then returned to SUBJECT VEHICLE placing SUBJECT PARCEL in the back seat.

12. Law enforcement followed BUSH to 2607 6th Avenue, Charleston, West Virginia (SUBJECT RESIDENCE). BUSH parked SUBJECT VEHICLE on the street, removed SUBJECT PARCEL from the back seat, and entered SUBJECT RESIDENCE. Law enforcement approached SUBJECT RESIDENCE and knocked on the front door. BUSH looked out the front window and then fled through the back door.

Officers stationed at the back of SUBJECT RESIDENCE were able to apprehend BUSH as he exited.

13. Detective Seth Johnson, Charleston Police Department provided his trained narcotic detection dog, "Rex". Rex has experience with narcotics investigations and was last certified in April 2019. Rex performed an open air sniff of the SUBJECT VEHICLE. Det. Johnson informed your affiant that Rex positively alerted on the SUBJECT VEHICLE indicating the presence of the odor of a controlled substance.

14. Based on the information contained herein, your affiant maintains there is probable cause to believe that the SUBJECT RESIDENCE – 2607 6th Avenue, Charleston, West Virginia – contains controlled substances, and/or proceeds which are evidence thereof, and/or contraband, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

Further your affiant sayeth naught.

_____
JOSHUA D. MEHALL
POSTAL INSPECTOR

Sworn to before me, and subscribed in my presence, this 5th Day of September, 2019.

_____
DWANE L. TINSLEY
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

The residence is described as a one story, stone single-family house with the numbers 2607 in white attached to the railing on the front porch. The residence is located at U.S. Postal address of 2607 6th Avenue, Charleston, Kanawha County, West Virginia.

The premises to be searched shall also include the home, garage, any and all yards, outbuildings, storage areas, motor vehicles, recreational vehicles, motor homes, vessels, sheds, animal cages, and mailboxes assigned.

**ATTACHMENT B**

    1.    Evidence of Drug Trafficking: Controlled substances, packaging materials, scales, cutting agents, presses, rubber bands, plastic bags, discarded wrappers, ledgers, bills of sale, owe sheets, lists of telephone numbers or other contact information, identifying information of customers and/or suppliers, documents related to the electronic transfer of money to include receipts for Western Union, MoneyGram and the like, prepaid debit cards, items associated with the use of controlled substances such as smoking devices, needles, items with suspected drug residue;

    2.    Evidence of Maintaining a Drug-Involved Premises: Utility bills, deeds, mortgage records, identification documents, and mail;

    3.    Electronic devices, to include, but not limited to: cellular telephones

    4.    Evidence of Firearms Possession and Use: Firearms, ammunition, bills of sale, firearm boxes and packaging, receipts relative to the purchase firearms and ammunition, photographs of firearms, holsters, slings, ammunition belts, and body armor;

    5.    Fruits of Criminal Activity: United States currency, all documents showing the purchase, ownership, lease (as lessor or lessee), or sale of any asset, personal or real to include automobiles, boats, motorcycles or similar motorized conveyances to include deeds, titles, and bills of sale.